Bi-Tong v. Bondi

BIA
Loprest, IJ
A209 218 616

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty-five.

PRESENT:
> JOSÉ A. CABRANES,
> RICHARD C. WESLEY,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

LIU BI-TONG,
> *Petitioner*,

v.                                                              23-7421

                                                               NAC

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:** Gerald Karikari, New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Sabatino F. Leo, Assistant Director; Aaron D. Nelson, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Liu Bi-Tong, a native and citizen of the People's Republic of China, seeks review of an October 3, 2023, decision of the BIA affirming an April 29, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] *In re Liu Bi-Tong*, No. A 209 218 616 (B.I.A. Oct. 3, 2023), *aff'g* No. A 209 218 616 (Immig. Ct. N.Y.C. Apr. 29, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan*

---

[1] The IJ later amended the decision to include additional reasoning, but Bi-Tong designated the original decision on appeal, and that is the only decision the BIA relied on. Our review, in turn, is limited to those aspects of the IJ's reasoning that the BIA affirmed. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005).

*Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's "legal conclusions *de novo*, and its factual findings, including adverse credibility determinations, under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . , the consistency between the applicant's . . . written and oral statements . . . , the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id*. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). Substantial evidence supports the agency's determination that Bi-Tong was not credible as to

his claim that he was arrested and beaten for attending an underground church.[2]

The IJ may rely on "demeanor, candor, or responsiveness" in determining credibility, *see* 8 U.S.C. § 1158(b)(1)(B)(iii), and such findings are entitled to deference. "[B]ecause demeanor is virtually always evaluated subjectively and intuitively, we accord an IJ great deference on this score." *Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (quotation marks and brackets omitted); *see also Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 109 (2d Cir. 2006) (explaining that "we give particular deference" to demeanor findings because the IJ is "in the best position to evaluate whether apparent problems in the . . . testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question" (bracket omitted)). Here, the IJ observed that Bi-Tong's testimony on direct examination sounded scripted and conformed closely to his prior statements, and that his demeanor changed on cross-examination, when his answers became significantly more hesitant. The IJ noted for the record multiple long pauses before Bi-Tong provided answers on cross-examination. Bi-

---

[2] The agency was not required to—and did not—cabin its adverse credibility determination to past events in China and credit Bi-Tong's testimony that he would attend underground churches in the future. *See Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) ("[A] single false document or a single instance of false testimony may (if attributable to the petitioner) infect the balance of the alien's uncorroborated or unauthenticated evidence.").

Tong does not dispute those observations, and deference is due to the IJ's conclusion that they signaled a lack of candor. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (quotation marks omitted)); *Majidi v. Gonzales*, 430 F.3d 77, 81 n.1 (2d Cir. 2005) (acknowledging that a "fact-finder who assesses testimony together with witness demeanor is in the best position to discern . . . whether a witness who hesitated in a response was nevertheless attempting truthfully to recount what he recalled of key events or struggling to remember the lines of a carefully crafted 'script'" (quotation omitted)).

The agency also reasonably relied on inconsistencies between Bi-Tong's testimony and letters from his mother and friend. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). The agency reasonably read Bi-Tong's mother's letter as saying she was alerted to his release by written notice, which is inconsistent with his testimony that she was informed by telephone and given the written notice later. *See Siewe*, 480 F.3d at 168 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. . . . Rather a reviewing court must defer to that choice so long as the deductions are not illogical or implausible." (quotation marks omitted)). And while we have cautioned the agency against

5

over-reliance on omissions from third-party statements, or an applicant's failure to explain such omissions, "an omission by a third party may form a basis for an adverse credibility determination." *Hong Fei Gao*, 891 F.3d at 81. Here, the agency properly considered Bi-Tong's mother's failure to mention personally picking him up from detention and seeing his injuries because those are matters his mother "would reasonably have been expected to disclose." *Id.* at 79.

In addition, Bi-Tong submitted a letter dated December 2017 from a friend in China, but testified that he received it in about June 2017. The agency was not required to accept Bi-Tong's assertion that he was confused. *See Majidi*, 430 F.3d at 80 ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks omitted)). While these inconsistency findings are not overwhelming, the agency noted as much and properly considered them in the totality of the circumstances. *See Xiu Xia Lin*, 534 F.3d at 167 (holding that agency may rely on the "cumulative effect" of minor inconsistencies in reaching an adverse credibility determination).

Finally, the absence of reliable corroboration further supports the adverse credibility determination. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general

6

makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). Regardless of the inconsistencies noted above, the agency reasonably granted little weight to the supporting letters because the authors were unavailable for cross-examination and Bi-Tong's mother was an interested party. *See Likai Gao*, 968 F.3d at 149 (holding that an "IJ acted within her discretion in according . . . little weight [to affidavits] because the declarants (particularly [petitioner's] wife) were interested parties and neither was available for cross-examination"); *Y.C.*, 741 F.3d at 332 ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence"). The only other document corroborating the past persecution was a release notice, but the agency reasonably assigned less weight to that document because Bi-Tong did not provide the original or explain why he failed to do so. *See Y.C.*, 741 F.3d at 332; Immigration Court Practice Manual Chapt. 3.3(d)(3) (instructing applicants to file copies with the court, but to bring original documents to all hearings), available at https://www.justice.gov/eoir/reference-materials/ic/chapter-3/3. The remaining evidence consisted of identity documents and evidence of Bi-Tong's religious practice in the United States, and would not have corroborated his claim of past persecution even if granted greater weight.

7

In sum, substantial evidence supports the adverse credibility determination given the demeanor finding, inconsistencies between Bi-Tong's testimony and supporting letters, and the absence of reliable corroboration. *See Likai Gao*, 968 F.3d at 149; *Xiu Xia Lin*, 534 F.3d at 167; *Biao Yang*, 496 F.3d at 273. The adverse credibility determination is dispositive of asylum, withholding of removal, and CAT relief because all three forms of relief are based on the same discredited factual predicate.[3] *See Hong Fei Gao*, 891 F.3d at 76.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

---

[3] Because the adverse credibility determination based on the combination of factors is dispositive, we need not reach the Government's arguments that the demeanor finding alone was sufficient and that Bi-Tong waived his CAT claim. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").